**JOELS v. BOUKANS et al.**

No. 26814. March 30, 1937.

Rehearing Denied May 25, 1937.

J. W. Clark, for plaintiff in error.

J. L. Fuller, for defendants in error.

PHELPS, J. The plaintiff's petition alleged that he and the defendants had been joint adventurers in the business of exploring for oil and gas, producing the same and marketing it, buying and selling oil leases, and drilling. He described with particularity a large number of tracts of land in which the parties to the action were interested, either as lessees, royalty owners, or fee-simple owners, and the name of the particular party in whom the title to each tract was held for the benefit of the other parties, and prayed an accounting and dissolution of the partnership.

The defendants filed their answer and cross-petition wherein they described additional property belonging to the parties, which had not been described in the petition. Altogether there were some 30 or 40 tracts of land involved. By stipulation and agreement the controversy was narrowed to the question of ownership of one tract of land, comprising 200 acres. This particular tract of land had been held in the name of plaintiff, who appeared as the grantee in a warranty deed of record. However, all of the interests in the various tracts of land owned by the partnership were held in that manner, that is, there were no tracts held in their joint names, but every tract, or interest in the tract, which was owned by the partners was held of record in the name of some one or more of the four members of the partnership.

It was the contention of plaintiff that as to the particular 200-acre tract in controversy he was the owner of the entire fee-simple title, while the defendants contended that this 200-acre tract was partnership property and that each of the partners owned an undivided one-fourth interest in the fee-simple title thereto. The defendants admitted that the $1,600 purchase money, with which the tract had been acquired, had been advanced by the plaintiff, just as he had advanced money for the purchase of other tracts belonging to the partnership. The trial court held in favor of the defendants and adjudged that the plaintiff had a lien against the land for the $1,600 purchase price which he had advanced, directed that the land be sold and that after costs were paid the receipts would be applied first to the repayment of plaintiff's $1,600, and the balance distributed equally between all of the parties. The decree further provided that should the land not sell for as much as $1,600 and costs, each of the defendants should pay to plaintiff one-fourth of the difference between the aforesaid $1,600 and the price obtained for the land at the sale. The plaintiff appeals.

The various contentions of the plaintiff, in appealing, resolve themselves into the assertion that the judgment of the trial court was against the weight of the evidence. The question therefore to be determined is whether the evidence warranted the finding that the 200-acre tract of land was the property of the partnership, as opposed to the contention of the plaintiff that it was his individual property.

After reviewing the evidence, we are convinced that the finding of the trial court was not against the clear weight thereof, and that the judgment should be affirmed. It appears that the defendants had expended some money and considerable time and labor in the investigation of oil possibilities near the city of Atoka at a place called Standing Rock. It was desired by them to drill an oil well in that vicinity, but they did not feel justified in doing so unless they could first acquire a block of leases on the surrounding territory. One of the defendants was a mining engineer of considerable experience, and the donation of his technical knowledge and activities, of a substantial nature, was his chief contribution to the conduct of the partnership enterprise. Another defendant had expended great effort and labor in the acquiring of surrounding leases. Still another of the defendants was the son-in-law of plaintiff, and helped manage the business. The plaintiff supplied most of the cash for the many ventures of the partnership. However, the respective defendants also put in cash from time to time, as new leases or new royalty deals arose. The understanding and method of operating were that when a tract of land,

a lease, or a block of royalty, or otherwise was sold at a profit, the partner who had advanced his money for the original purchase thereof would first be reimbursed in that amount and then the profit would be divided four ways equally. On the other hand, if a loss was sustained the partners would share the loss equally.

In "blocking up" this vicinity the partners encountered the 200-acre tract in question and found that they were unable to work out a satisfactory arrangement with the owner for the acquiring of a lease thereon which they desired. This tract was almost in the center of the area which was to be blocked, and very near the oil well which was subsequently drilled. All efforts to obtain said lease having failed, the defendants entered into a contract of purchase of this land, signing the plaintiff's name to said contract. The contract required a down payment of $200 to the owner of the land, which $200 was paid to said owner by one of the defendants. The defendant who signed the contract, with the knowledge of the other defendants, signed the plaintiff's name thereto as purchaser because the plaintiff had an excellent credit rating. It does not appear that the plaintiff knew of this fact at the time. Under the contract the remaining $1,400 of the purchase price would not have to be paid until four or five months later than the date of the contract, and the defendants testified that all of the parties expected, during that four or five months of intervening time, to sell leases or royalty sufficient in amount to raise this $1,400. However, when the time came to pay said remaining balance on the purchase price, they had not sold enough of their assets to make this $1,400 payment, and the partners all conferred over the problem as it existed at that time. Plaintiff was asked by the defendants, or some of them, to do what he had done on many of the other tracts, namely, advance the money for its purchase. This he did, and at the same time repaid the $200 to the defendant who had advanced that amount when the contract was signed. A deed was accordingly executed by the owner of the land, naming the plaintiff as grantee. The evidence is undisputed that when the question of whose name should be placed in the deed as grantee was being discussed, the plaintiff wanted his wife's name placed there, he wanted the land to stand of record in her name. The evidence is further undisputed that the defendants, or two of them, did not consent to the land being placed in plaintiff's wife's name and that the defendants based their objections to such procedure on the fact that plaintiff's wife was not a member of the partnership, and accordingly the plaintiff had his own name placed in the deed as grantee, which was in accord with the custom existing between the partners. It appears to us that if the understanding had been that plaintiff was to buy the land as his own individual property, and was thus departing from the usual custom of conducting the partnership enterprises, it would have been no concern of defendants whether the plaintiff took the land in his own name or in his wife's name. As stated above, the evidence in this connection was undisputed.

We do not overlook the testimony of plaintiff to the effect that there was an understanding between the partners, at the time when he advanced the purchase price, that he was buying the land as his separate property. We recognize, too, that his testimony was in some respects corroborated by one of the defendants, who was his son-in-law and who did not seem to oppose him in the trial of the action. On the other hand, however, the testimony of the other defendants was conversely to the effect that for some 30 days or more prior to the date upon which the remaining purchase price had to be paid, under the contract, the status of the ownership of the land was thoroughly discussed by the partners and that the respective members of the partnership, including the plaintiff, had decided to carry out the contract to purchase the land, in accordance with the usual custom,—that is, plaintiff to furnish the money and all of the partners to share the eventual loss or profit. As stated by the defendants in their brief, this was the expedient thing for them to do. As between the four of them, they were all bound by the contract anyway, each one being liable for his share, even though the contract of purchase was in the plaintiff's name, it having been placed there by one of the defendants. At the time of the purchase they were still drilling on the nearby oil well, which had not yet become a failure. Furthermore, the probabilities of the case, in the light of ordinary experience, all seem to support a state of facts making it highly probable that the tract in question was purchased as the joint property of the partners, instead of the sole property of plaintiff. The tract, as stated above, was almost exactly in the center of a territory being extensively worked by the parties as a partnership, and not as separate individuals. It does not seem probable that the ownership of the tract, so situated, would have been deemed different in nature

from the ownership of the surrounding tracts. Furthermore, it does not appear that any claim was ever made by the plaintiff, to the effect that he was sole owner of this tract, until near the time of filing this lawsuit. He admitted on cross-examination that had a profit been made by assigning the contract of purchase, prior to the actual completion of the purchase, it would have been shared equally among the partners. He did not deny having taken one or more of the defendants along with him to the farm, near the time of the payment of the balance of the purchase price, and there conducting himself and entering into conversation reflective of joint ownership and wholly antagonistic to the idea of his own sole ownership. There is other evidence in the case, on the issue involved, but we deem it unnecessary to discuss it. After thoroughly considering the matter, it is clear to us that the judgment of the trial court was not clearly against the weight of the evidence. Accordingly, the judgment is affirmed.

OSBORN, C. J., and RILEY, CORN, and HURST, JJ., concur.